FURGANG & ADWAR, L.L.P.
Stephanie Furgang Adwar (SA 1711)
Armando Llorens (AL 1757)
515 Madison Avenue
Suite 6W
New York NY 10022
212-725-1818

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X
ROBBINS ENTERTAINMENT LLC,

                        Plaintiff,           Civil Action No:

     -against-

                                      **JURY DEMANDED**

SPINNIN' RECORDS B.V.,
WALL RECORDING, LTD., and NICK
VAN DE WALL p/k/a AFROJACK,

                       Defendants.
-------------------------------------------------------X

## COMPLAINT

Plaintiff, ROBBINS ENTERTAINMENT LLC, (hereinafter, "Plaintiff" and "Robbins"), complaining of Defendant SPINNIN' RECORDS B.V. ("Spinnin'"), Defendant WALL RECORDING, LTD. ("Wall"), and Defendant NICK VAN DE WALL p/k/a "AFROJACK" ("Afrojack")(Defendants Wall and Afrojack jointly referred to as "Wall Defendants"), by its attorneys, Furgang & Adwar, L.L.P., respectfully alleges:

### INTRODUCTION

1.    This action seeks redress for a willful breach of contract, breach of third party beneficiary rights and tortious interference with a contract. Defendants have schemed to frustrate the legal rights of the Plaintiff Robbins to distribute the musical works of the recording artist, DJ and producer, Afrojack, in the United States and Canada. The scheme was accomplished through

willful and unlawful maneuvering by the Defendants regarding the signatories to relevant agreements and the requirements of consent all intended to defeat Robbins' lawful rights.

2.      Robbins  is an American dance and pop music record label that distributes music throughout the world.  In July 2010, Robbins and Defendant Spinnin' entered a contract concerning the exploitation of certain single master recording releases performed by Defendant Afrojack (the "Contract"). Pursuant to the Contract, Robbins acquired the exclusive North American distribution rights to certain master recordings performed by Afrojack and licensed to Spinnin'.

3.      In April 2020,  Robbins  learned that Defendant Spinnin' had released a commercial single by Afrojack. Robbins, pursuant to its rights under the Contract, timely exercised its option (the "Exercised Option") for the Afrojack single entitled "All Night."

4.      In May 2020, Robbins engaged in numerous discussions regarding the Exercised Option. Specifically, Robbins and Spinnin' discussed certain terms regarding the Contract. Spinnin' proposed several amendments to the Contract, and eventually all the issues were resolved and a final execution copy of the amendment to the Contract was transmitted by Robbins to Spinnin' on May 14, 2020.

5.      On May 15, 2020, Defendants Afrojack and Wall, through their legal counsel acknowledged  Defendant Spinnin's acceptance of the Exercised Option in communications with other related parties. Specifically, Defendants Afrojack and Wall, through their attorney, stated "Spinnin' would like to comply with Robbins exercise notice and our client Afrojack has approved same."

6.      However, on May 20, 2020, the Defendants hatched their scheme to frustrate Robbins' contractual rights. Specifically, Spinnin' requested that Robbins shorten the exploitation

term provided under the Contract from the ten (10) year period after releasing the last Afrojack work, expressly agreed to in the Contract. Robbins rejected this request.

7.     On May 25, 2020, Defendant Spinnin' made its intentions plain, stating Spinnin' "never intended in [the Contract], to give  Robbins an exploitation period of nearly 20 years." Because Defendant was now unhappy with the terms of the Contract, it commenced a scheme to deprive Robbins of its contractual rights.

8.     On June 12, 2020, Robbins wired the first half of the advance to Defendant Spinnin's account in accordance with the Exercised Option.

9.     On June 15, 2020, Defendant Spinnin', in an about-face from all of its prior conduct and written representations, stated to Robbins that Spinnin' did not "have an option."

10.     Defendant Spinnin' refused to deliver "All Night" to Robbins for distribution in the U.S. and Canada, as provided in the Contract, thus breaching and tortiously interfering with the Contract.

**THE PARTIES**

11.     Plaintiff Robbins is a limited liability company of the State of New York with offices at 101 Warren Street, No. 1650, New York, NY 10007.

12.     Defendant Spinnin' is a Dutch private limited company, with offices at Spinnin' Records B.V., Marathon 4, 1213 PJ Hilversum, the Netherlands.

13.     Defendant Wall Recordings, Ltd. is, upon information and belief, a Greek limited company with offices at Wall Recordings Ltd., 20 Stasikratous str., Cramvis Building , Office 101, 1065 Nicosia, Cyprus.

14.     Defendant Afrojack is, upon information and belief, an individual with offices at 20 Stasikratous str., Cramvis Building, Office 101, 1065 Nicosia, Cyprus.

## JURISDICTION

15.     The Court has jurisdiction over this matter pursuant to 28 U.S. Code §1332, in that all Defendants are of diverse citizenship to Plaintiff, and the amount in controversy is greater than $75,000.00, exclusive of interest and costs of court.

## VENUE

16.     Personal jurisdiction and venue are proper in this District pursuant to 28 U.S.C. §1391 and Section 301 of the New York Civil Practice Law and Rules (CPLR).

## FACTS RELATED TO ALL CLAIMS

17.     Plaintiff Robbins is an American dance and pop music record label founded in 1996. It distributes recorded music throughout the world.

18.     Defendant Spinnin' is a Dutch electronic music record label founded in 1999.

19.     Defendant Afrojack  is a recording artist, producer and DJ in the electronic music genre.

20.     Defendant Wall is, upon information and belief, a personal services corporation formed to provide the services of Defendant Afrojack to third parties and also releases music on a label branded "Wall Recordings," the name of which corporation derives from Afrojack's given last name, "Van der Wall."   Defendant Wall is, upon information and belief, wholly owned by Defendant Afrojack, who has complete control of Defendant Wall.

## CONTRACT BETWEEN ROBBINS AND SPINNIN'

21.     In July 2010, Plaintiff Robbins and Defendant Spinnin' entered into the Contract, which is a contract concerning the exclusive distribution and exploitation of certain single master recording releases by Defendant Afrojack in the territory of the United States and Canada.

22.     Plaintiff Robbins' Exercised Option, in 2020, to release the single, "All Night" by Afrojack and Defendant Spinnin's breach of the Contract, is the subject of this action.

23.     In relevant part:

        a.      The Contract applied to the single "Take Over Control" and two (2) additional singles to be optioned by Plaintiff Robbins pursuant to the terms of the Contract.

        b.      The "Exploitation Term" of the Contract was defined as:

        The period commencing on the date set forth above and continuing until the date that is ten(10) years **following the date of release of the *last* Record** wholly embodying Masters released in the United States hereunder. [Emphasis added.]

        c.      The options ("Options") granted Plaintiff Robbins the right to exclusively license "Single(s) recorded by Afrojack" which are "commercial records."

        d.      The Options in the Contract are subject to Defendant Spinnin's exercising its own options for such singles, "pursuant to its agreement with Afrojack."

        e.      Further, the parties acknowledged that although Defendant Afrojack was not "exclusively signed as a recording artist" to Defendant Spinnin', Spinnin' represented that "it has options for additional singles by Afrojack."

24.     Pursuant to the Contract, Plaintiff Robbins released "Take Over Control" by Afrojack featuring Eva Simons, in 2010 in the United States and Canada.

25.     The Contract provides:

        Options are exercisable by written notice within thirty (30) days after Licensor [i.e., Spinnin'] sends to Robbins a listening copy of the applicable Single. . .

26.     In 2012, Plaintiff Robbins learned that Defendant Spinnin' had plans to release the Afrojack single "Can't Stop Me" in the United States and Canada.

27.     Although Defendant Spinnin' was required to provide Plaintiff Robbins a listening copy of the commercial single, "Can't Stop Me", under the terms of the Contract, it failed to do so.

28.     When Plaintiff Robbins learned of Defendant Spinnin's planned release of "Can't Stop Me", it notified Defendant Spinnin' that it intended to option that single for distribution in the U.S. and Canada as provided for in the Contract.

29.     Defendant Spinnin' advised Plaintiff Robbins that it was considering licensing "Can't Stop Me" in the United States and Canada to another record label which was offering Defendant Spinnin' significantly more money to do so.  Robbins objected and advised that it would defend its right to option "Can't Stop Me" under the Contract, in court if necessary.

30.     After the attempt by Defendant Spinnin' to deny Plaintiff Robbins its right to option the Afrojack single "Can't Stop Me", Defendant Spinnin' acceded to Robbins' exercise of its option for the single "Can't Stop Me". Robbins then released "Can't Stop Me" in the United States and Canada in February, 2012.

31.     The two singles licensed by Plaintiff Robbins under the Contract, "Take Over Control" and "Can't Stop Me", were singles which Defendant Spinnin' acquired pursuant to its agreement with Defendant Afrojack, the Afrojack/Spinnin' Agreements (defined, below).

32.     Upon information and belief, Defendant Spinnin' did not acquire or release another qualifying commercial single by Defendant Afrojack since "Can't Stop Me", until its 2020 release of "All Night".

**BREACH OF THE CONTRACT BY SPINNIN'**

33.     In or about mid-April 2020, Plaintiff Robbins learned that Defendant Spinnin' had released a commercial single by Defendant Afrojack in the United States and Canada, but had not provided Plaintiff Robbins with a listening copy.

-6-

34.     On April 23, 2020, Anne Amann ("Amann"), counsel for Plaintiff Robbins, sent an email to Defendant Spinnin' executive Roger de Graaf ("de Graaf") advising that Plaintiff Robbins had learned that Defendant Spinnin' had released the single "All Night", and that pursuant to the Contract, Plantiff Robbins was requesting its right to review "All Night" in order to determine whether to exercise its final option under the Contract.

35.     On April 24, 2020, Defendant Spinnin' executive de Graaf replied via email to Amann, referring Amann to Nikki Broug ("Broug"), the head of legal and business affairs for Defendant Spinnin'.

36.     On or about May 4, 2020, Plaintiff Robbins learned from a leading dance music promoter which both parties engage, that Defendant Spinnin' had contacted him and advised him that Plaintiff Robbins was exercising its option for "All Night," and that the track would be coming out on Plaintiff Robbins' label in the U.S. and Canada.

37.     On May 6, 2020, Amann had a call with de Graaf, Broug and Defendant Afrojack's lawyer, Kurosh Nasseri ("Nasseri") to discuss Plaintiff Robbins' Exercised Option.

38.     At no time on the May 6, 2020 call did Nasseri or anyone from Spinnin' reject Plaintiff Robbins' Exercised Option on "All Night".

39.     On May 11, 2020, Broug emailed Amann referring to proposals Spinnin' wanted to make in connection with the "exercise of the 'All Night' record under the agreement between Defendant Spinnin' and Plaintiff Robbins, dated July 2010" (i.e., the Contract.)

40.     On May 11, 2020, Defendant Spinnin' asked for a few amendments to the Contract in connection with the release of "All Night". One request was that Robbins commit to a minimum promotion budget for "All Night". Although it was not required to do so, Robbins agreed in writing to commit to that budget, because Robbins intended to spend that amount anyway.

41.     The next requested amendment to the Contract was that Robbins only be permitted to recoup advances from royalties from "All Night" and not be permitted to cross-recoup from all three singles subject to the Contract.  Robbins rejected this request as a material deviation from the terms of the Contract, and Spinnin' accepted Robbins' position.

42.     On May 14, 2020, Broug emailed Amann, requesting that Defendant Spinnin' retain neighboring rights income earned on "All Night" up and until the date of Plaintiff Robbins' exercise of the final option under the Contract.

43.     In her May 14, 2020 email, Broug, on behalf of Defendant Spinnin', assured Plaintiff Robbins that if Plaintiff Robbins changed its position on the neighboring rights income point, Defendant Spinnin' would "accept [Robbins'] remaining comments and finalize [the letter confirming the agreed amendments to the Contract] tomorrow." Broug made no reservation of rights.

44.     On May 15, 2020, Amann responded on behalf of Plaintiff Robbins to Spinnin's offer via email, accepting Spinnin's counterproprosal on the neighboring rights collection start date.

45.     Amann forwarded an execution copy of the amendment to the Contract to formally memorialize the modification.

46.     At no point did Defendant Spinnin' reserve its rights to make additional amendments to its acceptance of  the agreed upon amendments to the Contract.

47.     Also on May 15, 2020, the Wall Defendants' attorney, Nasseri, emailed Atlantic Records and acknowledged acceptance of the Exercised Option and requested that Atlantic extend a "side artist waiver" of Ally Brooks, the featured vocalist on "All Night," to Plaintiff Robbins.  In his email, Nasseri referred to Robbins as "the releasing label [of "All Night"] in the USA and Canada going forward", and made the following statements:

a.      "Robbins Entertainment had previously released two Afrojack singles and now has exercised its remaining option for "All Night"; and

b.      "Spinnin' would like to comply with Robbins exercise notice and ***our client Afrojack has approved same***." (Emphasis added.)

48.     Until May 20, 2020, the representations and communications made by Defendant Spinnin' to Plaintiff Robbins and Plaintiff Robbins' independent promoter, as well as the representations by Nasseri on behalf of the Wall Defendants, acknowledged and accepted: (1) Plaintiff Robbins' option right under the Contract; (2) that "All Night" was the next consecutive single under the Contract, and (3) that Plaintiff Robbins had successfully exercised that option.

49.     On May 20, 2020, Plaintiff Robbins formally mailed its notice of the Exercised Option for "All Night", and offered to send the first half of the required advance to Defendant Spinnin's bank account to which Plaintiff Robbins regularly sends royalty payments under the Contract.

50.     Subsequently on that same date, Senior Legal Counsel for Defendant Spinnin', Stijn Kloosterboer ("Kloosterboer") emailed Plaintiff Robbins requesting that the exploitation term of the first two singles by Defendant Afrojack end ten (10) years after the release of the second Afrojack single, "Can't Stop Me", rather than ten (10) years after the release of "All Night", as the "last record" under the deal, as expressly contemplated by the Contract.

51.     Amann replied via email on May 20, 2020, informing Kloosterboer that this effort to renegotiate such a material term of the Contract was unacceptable.

52.     On May 21, 2020, Kloosterboer responded to Amann via email, refusing on behalf of Spinnin' to agree to the already modified and accepted Contract, unless Plaintiff's added Defendant Spinnin's proposed new modification of the exploitation term.

53.     Kloosterboer also alleged on behalf of Spinnin' in his May 21, 2020 email that "All Night" was not a consecutive single, as required by the Contract.

54.     On May 22, 2020, Amann replied on behalf of Plaintiff to Kloosterboer via email, summarizing the discussions between Defendant Spinnin' and Plaintiff Robbins beginning April 23, 2020 up to that point. Amann highlighted that Defendant Spinnin' had never objected to the characterization of "All Night" as the next consecutive single under the Contract, and that neither Defendant Spinnin' nor Nasseri contested the validity of Plaintiff Robbins' right to exercise its option; and, that Defendant Spinnin' had accepted that Plaintiff Robbins had properly asserted option rights in "All Night" under the Contract during all of their discussions for the prior month.

55.     On May 25, 2020, Kloosterboer wrote back to Amann via email, and claimed Defendant Spinnin' "never intended in [the Contract], to give Plaintiff Robbins an exploitation period of nearly 20 years."

56.     In his May 25, 2020 email, Kloosterboer attempted to retract Defendant Spinnin's previous acceptance of Plaintiff Robbins' Exercised Option under the Contract, stating that Defendant Spinnin' could do so because Defendant Spinnin' had "always reserved rights."

57.     In fact, Defendant Spinnin' accepted Robbins' Exercised Option right under the modified terms of the agreement in writing, and never reserved Defendant Spinnin's rights to make further amendment.

58.     On June 12, 2020, Plaintiff Robbins wired the first half of the advance to Defendant Spinnin's account, accompanied by a confirmation of the wire emailed from Amann to Kloosterboer, stating it was in accordance with the Exercised Option.

59.     On June 15, 2020, Defendant Spinnin' sent an email to Plaintiff Robbins stating that the advance payment was "unacceptable" and that Plaintiff Robbins did not "have an option."

-10-

60.     Defendant Spinnin' refused and continues to refuse to deliver "All Night" to Robbins for distribution in the U.S. and Canada, as provided in the Contract.

61.     On or about March 30, 2022, Defendant Spinnin' digitally released "Take Over Control" and "Can't Stop Me" in the United States and Canada, thus, further breaching the Contract.

62.     To this date, Defendant Spinnin' has not returned the advance payment made by Plaintiff Robbins.

**THE SPINNIN'/AFROJACK AGREEMENTS**

63.     Defendant Spinnin' represented in the Contract that it had the right to license commercial recordings by Afrojack to Plaintiff Robbins pursuant to Spinnin's "agreement with Afrojack." No specific agreement with Afrojack was identified.

64.     In February, 2010, Defendant Afrojack entered a "Non-exclusive producers-label agreement" with Defendant Spinnin' (the "2010 Afrojack/Spinnin' Agreement"), and upon information and belief, amended that agreement in 2011 (the "2011 Afrojack/Spinnin' Agreement")(jointly referred to herein as the "Afrojack/Spinnin' Agreements").

65.     The Afrojack/Spinnin' Agreements provided that the singles released by Defendant Spinnin' would be released via "the label Wall Recordings".

66.     The Afrojack/Spinnin' Agreements contemplate distribution of the singles by third party licensees, to wit:

        a.      the 2010 Afrojack/Spinnin' Agreement provides that Afrojack be paid a percentage of "the operating income received by Spinnin' for third party exclusive and non-exclusive licenses with third party (s)";

        b.      the 2011 Afrojack/Spinnin' Agreement states that Afrojack will be paid by Spinnin' a percentage of "income from exclusive deals outside of Europe";

c.      the 2011 Afrojack/Spinnin' Agreement also provides that Spinnin' is entitled to make, and Afrojack shall be paid pursuant to, "exclusive license deals to be made abroad"; and

d.      the 2011 Afrojack/Spinnin' Agreement provides that Afrojack and his manager shall be consulted prior to entering "exclusive license deals", and have approval rights over such exclusive license deals, not to be unreasonably withheld.

67.      There is no provision in the Afrojack/Spinnin' Agreements preventing the enforcement of the Afrojack/Spinnin' agreements by a third party.

## WALL/SPINNIN' AGREEMENT

68.      On January 1, 2020, Defendant Spinnin' entered a "Label Services" agreement which included a "Non-exclusive Production Agreement" with Defendant Wall, which provided Defendant Spinnin' with options to distribute singles by Defendant Afrojack and other third party artists, as approved by Defendant Wall ("Wall/Spinnin' Agreement").

69.      As part of the Wall/Spinnin' Agreement, incorporated as Appendix B to the Wall/Spinnin Agreement,  Defendant Afrojack executed an "Artists Agreement"  in which he "grants to Label by signing this Agreement control over the Master, for the duration of the Term, including the exclusive exploitation rights and the right to license and sublicense (subject to restrictions as outlined hereunder)."

70.      The Wall/Spinnin' Agreement obligates Defendant Spinnin' to "initiate and negotiate production agreements and licenses . . . with all third parties" and to "draft all such agreements on behalf of [Wall] and … conduct the relevant negotiations with third parties."

71.      Defendant Spinnin' further warrants in the Wall/Spinnin' Agreement that "it shall use reasonable endeavors to ensure a successful Exploitation of the Masters" under the agreement.

72.     The definitions section of the Wall/Spinnin' Agreement lays out the various permissible exploitations of the works including : "the licensing of any of the rights as mentioned herein to a third party."

73.     Exhibit A to the Wall/Spinnin' Agreement is a "Non-Exclusive Deal" which is signed by the parties and by Defendant Afrojack, on behalf of his loan out corporation, Defendant Wall, in which Defendant Afrojack "consents to [Wall] performing the Agreement and agrees to the terms and conditions therein, including, but not limited to, any terms or conditions of the Agreement that in any way, directly or indirectly, affect [Afrojack] or the services to be provided by [Afrojack], as well as the restrictions imposed on [Afrojack] in accordance with the stipulations of the Wall/Spinnin' Agreement", and Afrojack warrants to Defendant Spinnin' that he will fully and faithfully fulfill all terms and conditions of the Agreement.

74.     Nowhere in the Wall/Spinnin' Agreement does there appear any provision preventing the enforcement of the agreement by a third party.

75.     Additionally, attached to and forming part of the Wall/Spinnin' Agreement is an "Addendum" in which Defendant Wall "f/s/o Nick Van De Wall p/k/a Afrojack" provides the services of its owner, Defendant Afrojack, to deliver the commercial single "All Night," featuring vocalist Ally Brooke.

## COUNT I
(Breach of Contract Against Defendant Spinnin')

76.     This is a count for breach of contract against Defendant Spinnin'.

77.     Plaintiff repeats and realleges the allegations of ¶¶ 1 through 75, as if set forth herein.

78.     Pursuant to the Contract, the term of Plaintiff Robbins' exclusive rights in optioned Afrojack singles is a period of ten (10) years "following the date of release of the *last Record* wholly embodying Masters released in the United States hereunder." (Emphasis added.)

79.     Pursuant to the Contract, the commercial single, "All Night", is the "last Record" optioned by Plaintiff Robbins, but it was not released by Robbins  due to Defendant Spinnin's breach of contract complained of herein.

80.     Pursuant to the Contract, Plaintiff Robbins was to be provided a listening copy of all "commercial singles" recorded by Defendant Afrojack, in order for Robbins to determine whether to exercise its option to release said single.

81.     In 2020, Defendant Spinnin' released a commercial single by Defendant Afrojack entitled "All Night" and did not provide Plaintiff Robbins with a listening copy of the single, breaching the Contract.

82.     In or about mid-April 2020, Plaintiff Robbins learned of Defendant Spinnin's release of the commercial single, "All Night", and exercised its last option provided by the Contract.

83.     Defendant Spinnin' offered proposed amendments to the existing Contract in writing and Plaintiff Robbins accepted those amendments in writing.

84.     Subsequent to the parties' mutual written agreement to the amendments to the Contract, Defendant Spinnin' rejected the amendments previously made and insisted upon further amendments to the Contract.

85.     Plaintiff Robbins refused to make any additional amendments.

86.     Plaintiff Robbins exercised its option and paid to Defendant the required initial advance of Twenty Thousand ($20,000.00) Dollars.

87.     No part of the advance has been returned by Spinnin'.

88.     Defendant Spinnin' continues to refuse to deliver "All Night" to Plaintiff in breach of the Contract.

89.     Defendant Spinnin', having breached the Contract by failing to deliver Plaintiff the single "All Night", has caused financial loss and will cause further financial loss to Plaintiff in an amount not thus far determined, but believed to be in excess of One Million Dollars ($1,000,000.00).

### COUNT II
(Breach of Contract Against Defendant Spinnin')

90.     This is a count for breach of contract against Defendant Spinnin'.

91.     Plaintiff  repeats and realleges the allegations of ¶¶ 1 through 89, as if set forth herein.

92.     Pursuant to the Contract, the term of Plaintiff Robbins' exclusive rights in Afrojack singles optioned by Spinnin',  is a period of ten (10) years "following the date of release of the *last Record* wholly embodying Masters released in the United States hereunder." (Emphasis added.) Pursuant to the Contract, the commercial single, "All Night", is the last record optioned by Plaintiff Robbins, but it was not released due to Defendant Spinnin's breach of contract.

93.     Pursuant to the Contract and Plaintiff Robbins' Exercised Option for "All Night" thereunder, Plaintiff Robbins is entitled to continue to exclusively distribute and collect income in connection with the United States and Canadian distribution of  "Take Over Control" and "Can't Stop Me" for ten (10) years from the date of release of "All Night".

94.     Defendant Spinnin' continues to refuse to deliver "All Night" to Plaintiff in breach of the Contract.

95.     On or about March 30, 2022, Defendant Spinnin', in further breach of the Contract, released "Take Over Control" and "Can't Stop Me" on digital service providers such as Spotify, in

the United States and Canada, further violating the Contract by interfering with Plaintiff Robbins'

exclusive right to distribute those singles which Plaintiff Robbins released pursuant to the Contract.

96.    Defendant Spinnin', having breached the Contract by releasing "Take Over Control"

and "Can't Stop Me" in the United States and Canada, despite Plaintiff's exclusive agreement, has

caused financial loss and will cause further financial loss to Plaintiff in an amount not thus far

determined, but believed to be in excess of One Million Dollars ($1,000,000.00).

**COUNT III**
(Breach of Contract Against Defendant Spinnin')

97.    This is a count for breach of contract against Defendant Spinnin'.

98.    Plaintiff  repeats and realleges the allegations of ¶¶ 1 through 96, as if set forth

herein.

99.    Pursuant to the Contract, Defendant Spinnin' warrants and represents various

statements. Specifically Defendant Spinnin' warrants and represents, in pertinent part, that; "(a) it

is the sole and exclusive owner of the Masters, Artwork and Videos delivered to Robbins hereunder

and all necessary rights  in them,  under copyright and  otherwise,  throughout the  Territory  and

the Exploitation Term, and that it has the right and power to enter into and to fully  perform its

obligations under this agreement [. . . ]; and (e) no Person other than Robbins has any right to use

in the Territory, and during the Exploitation Term no Person other than Robbins will be authorized

to use in the Territory, any Masters of Artist's performances for making, promoting, or marketing

Records.

100.    Defendant Spinnin's representations described above were material and false, and

have caused Robbins damages.

-16-

101.    The Contract provides that Defendant Spinnin' "will at all times indemnify and hold harmless Robbins [. . . ] against any and all [. . . ] damages, [. . . .]  costs and expenses, including legal expenses and reasonable attorney fees, arising out of any breach or alleged breach by [Spinnin'] of any warranty, representation or covenant made by [Spinnin'] in this agreement. Pending the resolution of any claim in respect of which Robbins is entitled to be indemnified, Robbins may withhold monies which would otherwise be payable to [Spinnin'] under this agreement in an amount reasonably consistent with [Spinnin's]potential liability to Robbins under this paragraph."

102.    Defendant Spinnin', having breached paragraph 10 of the Contract, has caused Robbins damages in an amount not thus far determined, but believed to be in excess of One Million Dollars ($1,000,000.00), including costs and expenses, including legal expenses and reasonable attorneys fees.

### COUNT IV
(Breach of Third Party Beneficiary Rights
In the Wall/Spinnin' Contract By All Defendants)

103.    This count for breach of a third party beneficiary contract is alleged against all Defendants.

104.    Plaintiff  repeats and realleges the allegations of ¶¶ 1 through 102, as if set forth herein.

105.    As set forth herein, Defendant Spinnin' and Defendant Afrojack are parties to the Afrojack/Spinnin' Agreements and Defendant Spinnin' and the Wall Defendants are parties to the Wall/Spinnin' Agreement.

106.    Defendant Spinnin' is on notice and is fully aware that Plaintiff Robbins is a third party beneficiary of Defendant Spinnin's  agreements with Defendants Afrojack and Wall.

-17-

107.    Defendant Spinnin' entered into the Wall/Spinnin' Agreement with Defendant Afrojack's loan out corporation, Defendant Wall, the terms of which were almost identical to those of the Afrojack/Spinnin' Agreements.

108.    As set forth herein, the Afrojack/Spinnin' Agreements and the Wall/Spinnin' Agreement contain clear and unambiguous provisions providing for the licensing of singles to third parties.

109.    The 2010 Afrojack/Spinnin' Agreement provides that Defendant Afrojack be paid a percentage of  "the operating income received by Spinnin' for third party exclusive and non-exclusive licenses with third party (s)."

110.    Similarly, the 2011 Afrojack/Spinnin' Agreement provides that Defendant Spinnin' is entitled to make, and Defendant Spinnin' and Defendant Afrojack shall be paid pursuant to, "exclusive license deals to be made abroad".

111.    The Wall/Spinnin' Agreement obligates Defendant Spinnin' to "initiate and negotiate production agreements and licenses . . . with all third parties" and to "draft all such agreements on behalf of [Wall Recordings] and … conduct the relevant negotiations with third parties."

112.    The definitions section of the Wall/Spinnin' Agreement lays out the various permissible exploitations of the works including : "the licensing of any of the rights as mentioned herein to a third party."

113.    Defendant Spinnin' warrants in the Wall/Spinnin' Agreement that "it shall use reasonable endeavors to ensure a successful Exploitation of the Masters and [Wall Recordings]" under the agreement.

114.    Defendant Spinnin' promises that "Spinnin' has solely an obligation to pay a royalty to Client, but can, upon Client's instruction, pay royalties directly to Artist [Defendant Afrojack]."

115.    Plaintiff Robbins is exactly the type of third party licensee anticipated and intended by the Afrojack/Spinnin' Agreements, as well as the Wall/Spinnin' Agreement.

116.    The benefit to Plaintiff Robbins of its third party licenses with Defendant Spinnin' pursuant to the Afrojack/Spinnin' Agreements and the Wall/Spinnin' Agreement, is sufficiently immediate such that Defendants' denial of such benefit has resulted in Defendants' duty to compensate Plaintiff Robbins for the loss of such benefit.

117.    Defendant Spinnin' never notified Plaintiff Robbins of the termination or expiration of the Afrojack/Spinnin' Agreements or of the formation of the Wall/Spinnin' Agreement, or the effect that termination and entry of these agreements would have on Plaintiff Robbins' active and enforceable Contract with Defendant Spinnin'.

118.    Defendants' refusal to license "All Night" to Plaintiff Robbins has resulted in a deprivation of the rights promised to Plaintiff Robbins under the Contract and as a third party beneficiary of the Afrojack/Spinnin' Agreements and Wall/Spinnin' Agreements.

119.    As a result of this deprivation of rights, Defendants have caused financial loss and will cause further financial loss to Plaintiff Robbins in an amount not thus far determined, but believed to be in excess of One Million Dollars ($1,000,000.00).

**COUNT V**
(Breach of Implied Covenant of Good Faith and
Fair Dealing Against Defendant Spinnin')

120.    This is a count for breach of the implied covenant of good faith and fair dealing is alleged against Defendant Spinnin'.

121.    Plaintiff  repeats and realleges the allegations of ¶¶ 1 through 119, as if set forth herein.

122.    As set forth herein, Plaintiff Robbins and Defendant Spinnin' are parties to the Contract.

123.    Defendant Spinnin' is on notice and is fully aware that Plaintiff Robbins is a third party beneficiary of Defendant Spinnin's  agreements with Defendant Afrojack.

124.    Defendant Spinnin' entered into the Wall/Spinnin' Agreement with Defendnat Afrojack's loan out corporation, Defendant Wall, the terms of which were almost identical to those of the Afrojack/Spinnin' Agreements.

125.    The Wall/Spinnin' Agreement represents a virtually identical arrangement with virtually identical parties to the Afrojack/Spinnin' Agreements.

126.    Defendant Spinnin' never notified Plaintiff Robbins of the termination or expiration of the Afrojack/Spinnin' Agreements or of the formation of the Wall/Spinnin' Agreement, or the effect that the termination and entry of these agreements would have on Plaintiff Robbins' active and enforceable Contract with Defendant Spinnin'.

127.    Defendant Spinnin's entering the Wall/Spinnin' Agreement resulted in Defendant Spinnin's deprivation of Plaintiff Robbins' rights under the Afrojack/Spinnin' Agreement.

128.    Defendant Spinnin's entering the Wall/Spinnin' Agreement interferes with and destroys Plaintiff Robbins' expectations with respect to the benefits of the Contract.

129.    As a result of this deprivation of rights, Defendants have caused financial  loss and will cause further financial loss to Plaintiff Robbins in an amount not thus far determined, but believed to be in excess of One Million Dollars ($1,000,000.00).

**COUNT VI**
(Tortious Interference With Contractual Relations
Against Defendants Wall and Afrojack)

130.    This is a count for tortious interference with contractual relations and is alleged against Defendants Wall and Afrojack.

131.    Plaintiff repeats and realleges the allegations of ¶¶ 1 through 129, as if set forth herein.

132.    As set forth herein, Plaintiff Robbins and Defendant Spinnin' are parties to the Contract.

133.    The Wall Defendants are on notice and are fully aware of the rights possessed by Plaintiff Robbins under the Contract.

134.    Defendant Spinnin' entered into the Wall/Spinnin' Agreement with Defendant Afrojack's loan out corporation, Defendant Wall, the terms of which were almost identical to those of the Afrojack/Spinnin' Agreements.

135.    The Wall/Spinnin' Agreement represents a virtually identical arrangement with virtually identical parties to the Afrojack/Spinnin' Agreements.

136.    Upon information and belief, Defendant Spinnin' and Defendants Wall and Afrojack acted to terminate the formal relationship between Afrojack and Spinnin' by entering a new agreement with Afrojack's loan out corporation, Wall, with the known and intended effect of, in part, diminishing Plaintiff Robbins' active and enforceable Contract with Defendant Spinnin'.

137.    Upon information and belief, Defendants Wall and Afrojack refused to accede to the Exercised Option by Plaintiff Robbins with the known and intended effect of diminishing Plaintiff Robbins' active and enforceable Contract with Defendant Spinnin'.

138.    Defendants Wall and Afrojack have tortiously interfered with Plaintiff Robbins' rights under the Contract.

139.    Defendant Wall and Afrojack tortiously interfered with and destroyed Plaintiff Robbins' reasonable and foreseeable expectations with respect to the benefits of the Contract.

140.    As a result of this tortious interference with Plaintiff Robbins' rights in the Contract, Defendants Wall and Afrojack have caused financial loss and will cause further financial loss to Plaintiff Robbins in an amount not thus far determined, but believed to be in excess of One Million Dollars ($1,000,000.00).

WHEREFORE, Plaintiff demands:

1.    With respect to the breach of contract alleged in Count I against Defendant Spinnin':

(a)    that Plaintiff recover from Defendant Spinnin', a money judgment in an amount to be determined at trial but believed to be in excess of One Million Dollars ($1,000,000.00);

(b)    that  Defendant Spinnin' be required to specifically perform the Contract by delivering the master recording constituting the single "All Night" to Plaintiff Robbins and honoring Robbins' exclusive rights in "All Night";

(c)    that Plaintiff Robbins, pursuant to the Contract, be permitted to collect income related to US and Canada distribution of  the master recordings, "Take Over Control", "Can't Stop Me", and "All Night" for ten (10) years from the date of Robbins' release of "All Night" pursuant to the Contract;

2.    With respect to the breach of contract alleged in Count II against Defendant Spinnin':

(a)    that Plaintiff recover from Defendant Spinnin', a money judgment in an amount to be determined at trial but believed to be in excess of One Million Dollars ($1,000,000.00);

(b)      that Defendant Spinnin' be required to specifically perform the Contract by terminating its digital release of "Take Over Control" and "Can't Stop Me" on Spotify and any other digital distribution service in the United States and Canada, and returning such rights to Plaintiff Robbins on an exclusive basis; and

(c)      that Defendant Spinnin' account to Robbins for all income earned in connection with the improper digital release of "Take Over Control" and "Can't Stop Me" in the United States and Canada;

3.      With respect to the breach of contract alleged in Count III against Defendant Spinnin':

(a)      that Plaintiff recover from Defendant Spinnin', a money judgment in an amount to be determined at trial but believed to be in excess of One Million Dollars ($1,000,000.00);

(b)      that Plaintiff be awarded its costs and expenses, including but not limited to, legal expenses and reasonable attorneys fees;

4.      With respect to the breach of the third party beneficiary contract alleged in Count IV against all Defendants:

(a)      that Defendants be directed to specifically perform the Contract` by delivering the master recordings constituting the single "All Night" to Plaintiff Robbins and honoring Robbins' exclusive rights in "All Night";

(b)      that Plaintiff recover from all Defendants money damages in an amount not yet determined, but believed to be in excess of One Million Dollars ($1,000,000.00);

5.      With respect to the breach of implied duty of good faith and fair dealing

alleged in Count V, that Plaintiff recover from Defendant Spinnin', money damages in an amount not yet determined, but believed to be in excess of One Million Dollars ($1,000,000.00);

6.     With respect to the tortious interference with a contract alleged in Count VI, that Plaintiff recover from Defendants Afrojack and Wall, money damages in an amount not yet determined, but believed to be in excess of One Million Dollars ($1,000,000.00);

7.     That Plaintiff Robbins recover from Defendants reasonable counsel fees together with the costs of this action;

8.     That Defendants be required to account to Plaintiff for all gains, profits, and advantages derived from Defendants' wrongful acts; and

9.     That Plaintiff has such other and further relief as to the Court may seem just and proper.

Dated:  New York, New York
        July 5, 2022

FURGANG & ADWAR, L.L.P.
Attorneys for Plaintiff

By: /Stephanie Furgang Adwar/
Stephanie Furgang Adwar (SF 1711)
Armando Llorens (AL 1757)
515 Madison Avenue, Ste. 410
New York, New York 10022
(212) 725 - 1818